1
2
3
4
5
6
7           IN THE UNITED STATES DISTRICT COURT FOR THE
8                   EASTERN DISTRICT OF CALIFORNIA
9
YIA VANG,                          )        1:10cv01810 DLB
10                                 )
                  Plaintiff,       )        ORDER REGARDING PLAINTIFF'S
11                                 )        SOCIAL SECURITY COMPLAINT
                                   )
12                                 )
          vs.                      )
13                                 )
MICHAEL J. ASTRUE, Commissioner of )
14 Social Security,                )
                                   )
15                Defendant.       )
_____ )
16
17        Plaintiff Yia Vang ("Plaintiff") seeks judicial review of a final decision of the Commissioner

of Social Security ("Commissioner") denying her application for Supplemental Security Income
18
("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on
19
the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck,
20
United States Magistrate Judge.[1]
21
                              **BACKGROUND**[2]
22
          On August 30, 2007, Plaintiff filed her application for SSI.  AR 105-12.  She alleged
23
disability since July 3, 2007, due to diabetes, hypertension, hepatitis b, lower back pain, post
24
traumatic stress disorder and major depression.  AR 119.  After her application was denied initially
25
_____

26        [1] The parties consented to the jurisdiction of the United States Magistrate Judge.

27        [2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

28                                        1

1   and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

2   AR 60-63, 68-72, 74-75.  On August 28, 2009, ALJ Patricia Flierl held a hearing.  AR 21-40.  ALJ

3   Flierl denied benefits on January 16, 2010.  AR 9-20.  On July 29, 2010, the Appeals Council denied

4   review.  AR 5-7.

5        Hearing Testimony

6        ALJ Flierl held a hearing on August 28, 2009, in Fresno, California.  Plaintiff appeared with

7   her attorney, Melissa Proudian, and testified with the assistance of a Hmong language interpreter.

8   Thomas Dachelet, a vocational expert, also appeared.  AR 23.

9        Plaintiff was born in 1961.  She lives with her six children.  AR 24-25.  She has no

10  schooling.  She cannot read, write, speak or understand English and she cannot read or write in her

11  own language.  She has never received any vocational training.  She last worked in 2005 or 2006

12  providing in-home care for her son.  AR 26.

13       Plaintiff testified that she was not able to do any job eight hours a day, five days a week

14  because of a stroke in 2002.  While in Thailand, her husband was killed in an accident and she

15  experienced a stroke.  She came to the United States in September 2004.  Plaintiff also reported that

16  diabetes, anxiety, hepatitis and numbness prevent her from working.  The numbness occurred after

17  her stroke in 2002.  When asked how she was able to take care of her son in 2005, Plaintiff explained

18  that her name was on the application, but her older son was doing the work.  She got paid, but gave

19  the money to her son.  Her only source of income is welfare.  AR 27-29.

20       In response to questions from her attorney, Plaintiff testified that she has hypertension and

21  depression.  She was diagnosed with diabetes when she first came to the United States.  She takes

22  pills, follows a diabetic diet and tests her blood sugars every day.  She takes all of her prescribed

23  medications for high blood pressure, diabetes, stroke and weakened heart.  AR 29-30.

24       Plaintiff reported that she experiences weakness on a daily basis.  Her doctor sent her for a

25  heart exam because of the weakness.  She gets chest pain up to three times a week.  When she is

26  feeling weak, she lies down three or four times during the day.  AR 31-32.

27       Plaintiff testified that the death of her husband and son keep haunting her.  She was at the

28                                              2

1  scene when her husband was killed.  She tries to block the thoughts, which she has about five to six

2  times per week.  AR 32-33.

3  Plaintiff stated that she does not have friends in the United States.  She does not have any

4  interests or hobbies.  She has felt like killing herself three times.  One time she got a knife, but her

5  son took it away.  She cannot sleep at night, cannot concentrate and cannot do things around the

6  house.  AR 34-35.

7  Plaintiff testified that a doctor gave her a cane about a year before the hearing.  She uses the

8  cane because she is weak and cannot walk by herself.  She has some assistance from her kids to get

9  dressed and to bathe.  AR 35-36.  Plaintiff believed her depression was getting worse.  She receives

10  treatment at Fresno County Mental Health.  AR 36.

11  The vocational expert ("VE") also testified.  He characterized Plaintiff's past relevant work

12  as medium, SVP 3 per the DOT and unskilled as performed.  AR 37.  For the first hypothetical, the

13  ALJ asked the VE to assume an individual the same age, educational background and work history

14  as Plaintiff.  This individual was limited to a light exertional level, one to two-step job instructions

15  and no interaction with the public.  The VE testified that this individual could not perform Plaintiff's

16  past relevant work, but could perform other sedentary, light unskilled jobs in the economy.  There

17  would be approximately 520,000 light unskilled jobs, such as bagger, garment sorter and grader.  AR

18  37.

19  For the second hypothetical, the ALJ asked the VE to assume the same hypothetical

20  individual.  This individual was limited to sedentary work, could stand and walk less than two hours

21  out of eight, could sit less than six hours out of eight and was limited to one to two-step tasks and no

22  interaction with the public.  The VE testified that this individual could not perform Plaintiff's past

23  relevant work.  AR 38.

24  Medical Record

25  Between 2004 and 2009, Plaintiff received treatment at Valley Family Medical Clinic

26  ("Valley Family").  From November 2004 through September 2005, treatment notes documented

27  anxiety, depression, diabetes, diabetic neuropathy, hypertension, lumbar spine pain, insomnia and

28  

3

fatigue.  AR 387, 391-92, 396-97, 401-02.  Between February and November 2006, treatment notes continued to reflect anxiety, depression, diabetic neuropathy, lumbar spine pain, insomnia and fatigue.  AR 194, 373-76, 383-84, 386.  March 2006 x-ray reports sent to Dr. Patrick Tran at Valley Family showed a normal chest, a normal right shoulder and normal hands.  AR 378-81.  There also was no significant abnormality at the thoracolumbar junction.  AR 382.

Between February 2007 and December 2007, Valley Family treatment records noted ongoing anxiety, depression, neuropathy, lumbar spine pain, insomnia and fatigue.  Plaintiff also had repeated diagnoses of anemia.  AR 186, 190-93, 235-40.

On November 19, 2007, Dr. Rustom F. Damania completed a consultative internal medicine evaluation.  On physical examination, Plaintiff's coordination, station, posture and gait were normal. She did not use an assistive device.  Her spine and joint range of motion was within normal limits. Her straight leg raising was normal.  She had no paravertebral muscle spasms, tenderness, crepitations, effusions or deformities.  Her power was 5/5 in both upper and lower extremities.  Dr. Damania noted that Plaintiff was "not very cooperative on the left side."  She stated that she could not feel anything in the left hand.  Her reflexes were normal.  Following the examination, Dr. Damania diagnosed diabetes mellitus and hypertension, Hepatitis B by history and a history suggestive of a possible stroke.  Dr. Damania opined that Plaintiff should be able to lift and carry 20 pounds occasionally and 10 pounds frequently.  She should be able to stand and walk for six hours out of a normal eight hour workday and to sit six hours.  She did not require an assistive device for ambulation and had no postural, manipulative, visual or communicative impairments.  She also had no workplace environmental limitations.  AR 203-06.

A lumbosacral spine x-ray ordered by Dr. Damania and completed on November 19, 2007, showed narrowing of the L5-S1 disc space with some sclerosis of the disc margins and spurring anteriorly.  She was diagnosed with degenerative change at the L5-S1 level.  AR 211.

On November 19, 2007, Dr. Shireen Damania completed a consultative psychiatric evaluation.  Plaintiff reported that she attends church on Sunday, watches television and takes care of her activities of daily living.  On mental status exam, Plaintiff's mood was mildly depressed.  Her

4

affect was appropriate to thought content and situation.  Her memory for recent and past recall was intact, her attention span was within normal limits and her insight and judgment were fair.  Dr. Damania diagnosed Plaintiff with an adjustment disorder with depressed mood and bereavement. She assigned Plaintiff a Global Assessment of Functioning ("GAF") of 55.  Plaintiff had no noted difficulties in memory, concentration, persistence or pace.  There was no evidence of any emotional lability or deterioration.  Dr. Damania opined that Plaintiff was able to understand, carry out and remember simple one- and two-step job instructions in an unskilled setting.  She was able to respond appropriately to co-workers, supervisors and the public.  She was able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision.  AR 207-09.

On December 13, 2007, P. Davis, a state agency medical consultant, completed a Psychiatric Review Technique form.  Dr. Davis indicated that Plaintiff had depression and bereavement, which did not precisely satisfy the diagnostic criteria of an affective disorder.  She also had anxiety, which did not precisely satisfy the diagnostic criteria of an anxiety-related disorder.  Dr. Davis opined that Plaintiff had moderate restriction of her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  There was insufficient evidence of decompensation.  Dr. Davis concluded that Plaintiff could perform very simple and repetitive work tasks for two hour blocks of time, but her symptoms might interfere with her ability to work in consistent manner.  She also would be distracted by working around others.  AR 214-27.

On the same date, Dr. Davis completed a Mental Residual Functional Capacity Assessment form.  He opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods and to work in coordination with or proximity to others without being distracted by them.  Dr. Davis further opined that Plaintiff had moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  She had

5

moderate limitations in the ability to interact appropriately with the general public and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She also had moderate limitations in the ability to respond appropriately to changes in the work setting. AR 228-29. Dr. Davis explained that Plaintiff could understand, remember and carry out only very simple and repetitive work tasks if the very simple instructions were offered in her language. She could only sustain her concentration, pace and persistence for up to 2 hour blocks, but might need more breaks due to her symptoms interfering with her ability to concentrate/attend. Plaintiff could interact with supervisors on all levels. Coworkers and the general public would see her as inattentive/distracted, sad and difficult to interact with, so should have little or no contact with them. Dr. Davis also opined that Plaintiff could adapt only to a work setting that was highly stable and predictable and where she could work at a steady pace. AR 228-30.

Plaintiff continued receiving treatment at Valley Family in 2008. Treatment records from January through December 2008 reflected recurring anemia, anxiety, depression, diabetes, diabetic neuropathy, insomnia and fatigue. AR 232-34, 343-47, 350-52, 354, 364, 367.

On May 10, 2008, Dr. Rudolph Warren, a state agency medical consultant, completed a Psychiatric Review Technique form. He opined that Plaintiff did not have a severe mental impairment and only had mild functional limitations with no repeated episodes of decompensation. AR 247, 255.

On June 23, 2008, Ger Thao, an Associate Clinical Social Worker at the Fresno Center for New Americans, prepared a summary of Plaintiff's psychiatric issues and treatment for Dr. Patrick Tran at Valley Family Medical Clinic. According to Ger Thao, Plaintiff had been in group therapy since October 5, 2007. When initially evaluated, Plaintiff presented with a daily depressed and anxious mood, with a tearful affect, hopelessness, distress, sleep disturbance, fatigue and somatic aches and pains. She reported being unable to function due to her mental/emotional problems and was frustrated over her chronic illnesses, such as diabetes. The social worker indicated that Plaintiff had been prescribed medications to control her illnesses and to alleviate her depressed mood, but her compliance was questionable. Plaintiff was reevaluated in April 2008. Her diagnosis of a major

depressive disorder, single episode, mild was reconfirmed.  Plaintiff denied any progress towards her treatment goal and continued to report feeling hopeless and helpless.  AR 357-58.

On July 2, 2008, Dr. Harcharn Chann completed a cardiac evaluation.  A EKG showed nonspecific ST-T changes.  Dr. Chann assessed Plaintiff with atypical chest pain and recommended noninvasive testing.  AR 310-11.  On July 18, 2008, Plaintiff underwent a stress test, which was unremarkable.  She had no evidence of significant stress-induced ischemia and had a normal ejection fraction.  AR 307-08.

On October 2, 2008, Pao Vang, M.S.W., of Fresno County Mental Health, completed a Comprehensive Assessment.  Plaintiff stated that she felt excessively depressed and unable to concentrate on daily chores.  Her depression reportedly began in Thailand after the death of her husband.  Her condition worsened after arriving in the United States and following the death of her son, who cut his own hand.  AR 297-98.  Plaintiff complained of nightmares about 4-5 times per week and a decreased appetite.  On mental status, Plaintiff's mood was calm, sad, depressed, worried and tense.  Her affect was flat and tearful.  She reported auditory and visual hallucinations 2-3 times a week.  Her thought flow was circumstantial and tangential, with a poverty of ideas.  Her thought content was shallow.  Her memory, abstraction, interpretation, judgment and insight were fair.  She denied present thoughts of suicide.  Mr. Vang diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features and rule out Post Traumatic Stress Disorder.  She had a current GAF of 50.  AR 299-301, 304.  A treatment plan was discussed and an Initial Plan of Care was developed to manage Plaintiff's depression.  AR 296, 301.  In her plan of care, Plaintiff reported excessive crying spells, 4-5 times a day, 6-7 days a week.  Plaintiff was to receive specialty mental health services, individual and group therapy and individual and group rehabilitation.  AR 296.

Between October 13, 2008, and June 4, 2009, Plaintiff attended group and individual therapy at Fresno County Mental Health.  AR 259-60, 262-67, 269-95.  In May 2009, Plaintiff's case manager reported that Plaintiff had "been doing little improve [sic] with her depression."  AR 261.

On May 11, 2009, John Roberts, LCSW, completed a psychological/psychiatric assessment.  On mental status exam, Plaintiff was tearful.  Her mood was anxious and depressed and her affect

was flat.  Her remote memory was poor and she reported auditory and visual hallucinations.  Mr. Roberts described her as easily confused and forgetful.  He diagnosed senile dementia, anxiety and major depression.  AR 313-15.

Between January and August 2009, Plaintiff received ongoing treatment at Valley Family for diagnoses of anemia, anxiety, depression, diabetic neuropathy, lumbar spine pain and insomnia.  AR 328-29, 331-34, 336-39, 340-42.

On an unknown date, Dr. Tran of Valley Family completed a Physical Capacities Evaluation form.  Dr. Tran opined that Plaintiff could sit 2 hours, stand 1 hour and walk 1 hour in an 8 hour workday.  She must alternate sitting and standing every 60 minutes, elevate her legs while sitting and required a cane to walk.  She occasionally could lift up to 5 pounds, but could never lift more than 5 pounds.  She had no problems using her hands, but could not use her feet for repetitive movements.  She occasionally could bend, crawl, climb, kneel and stoop, but could never squat.  She had mild restrictions from activities involving wetness, humidity and noise, moderate restrictions from activities involving extreme cold/heat, vibration, fumes, odors, dust, gases and poor ventilation.  She had a total restriction from activities involving hazards (machinery, heights).  Her vision was limited.

Dr. Tran indicated that Plaintiff had diagnoses of diabetes, diabetic neuropathy, hypertension, chest pain, dyslipidemia, chronic lumbar pain, insomnia, anemia, post traumatic stress syndrom, general anxiety, depression, post stroke, osteoarthritis of the lumbar spine and chronic headaches. Dr. Tran explained that Plaintiff had chronic lumbar pain, multiple muscle spasms and joint pain secondary to osteoarthritis and diabetic neuropathy.  Lifting objects weighing more than 5-10 pounds caused a tingling sensation to her hands and fingers.  Sitting for more than 1 ½ hours and standing/walking more than 1 hour caused lumbar and lower leg spasms, neck pain and headache. Dr. Tran reported that Plaintiff had a stroke in 2002 with some left side weakness resulting in an unsteady gait.  Although she could not read or write, she could follow simple verbal instructions/commands.  Dr. Tran also noted that Plaintiff had anxiety, depression and post traumatic stress disorder as documented by her psychologist/psychiatrist.  AR 324-26.

ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2007.  She had the severe impairments of diabetes, degenerative disc disease, and depression/adjustment disorder (non-severe).  Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, but was restricted to jobs involving one-to-two step job tasks and no interaction with the general public.  With this RFC, she could not perform her past relevant work, but could perform a significant number of other jobs in the national economy.  AR 14-19.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such

severity that she is not only unable to do her previous work, but cannot, considering her age,

education, and work experience, engage in any other kind of substantial gainful work which exists in

the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden

is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated

regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §

416.920(a)-(g)  Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in

substantial gainful activity since August 15, 2007; (2) has an impairment or a combination of

impairments that is considered "severe" (diabetes, degenerative disc disease, and

depression/adjustment disorder (non-severe)) based on the requirements in the Regulations (20

C.F.R. § 416.920(c)); (3) does not have an impairment or combination of impairments which meets

or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) she

could not perform her past relevant work; but (5) she could perform a significant number of other

jobs in the national economy.  AR 14-19..

Here, Plaintiff contends that the ALJ improperly evaluated her excess pain testimony and the

third-party testimony of Korlu Vang.  Plaintiff also contends that the ALJ improperly evaluated the

medical opinion evidence.

## DISCUSSION

**A.    Excess Pain Testimony**

Plaintiff first contends that the ALJ erred by discrediting her excess pain testimony because it

was not fully supported by objective evidence.  While subjective pain testimony may not be rejected

solely because it is not corroborated by objective medical findings, the medical evidence is a relevant

factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir.2001); 20 C.F.R. § 416.929(c)(2).  Despite contending that the ALJ could

not reject her testimony based on a lack of objective evidence, Plaintiff asserts that the objective

evidence is consistent with her complaints.  Plaintiff's assertion is unsupported.  As a practical

matter, Plaintiff primarily cites to her own complaints of numbness, weakness, fatigue, dizziness, crying and limited daily activities.  Opening Brief, p. 9.  This is not objective evidence.

Plaintiff refers to treatment records documenting peripheral neuropathy and anemia, but there are no objective tests or studies in the record confirming or otherwise supporting these diagnoses.  In fact, Plaintiff admits that no EMG was performed to confirm diabetic neuropathy and lab tests did not show a blood level consistent with listing level anemia.  Opening Brief, p. 9.  Plaintiff also cites clinical findings of tenderness in the muscles and joints of her lumbar spine, along with a MRI demonstrating degenerative changes at the L5-S1 level.  Opening Brief, p. 9; AR 211.  However, at a consultative examination performed on the same date as the relevant MRI, Plaintiff had normal coordination, station, posture and gait, she did not use an assistive device, her spine and joint range of motion were within normal limits, her straight leg raising was normal, and she had no paravertebral muscle spasms or tenderness.  AR 203-06.  Accordingly, the objective evidence does not support allegations of a disabling physical condition or the physical limitations asserted by Plaintiff.

The Court recognizes that a claimant's own testimony of disabling pain cannot be discredited "merely because [it is] unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1996).  In this case, the ALJ did not discredit Plaintiff's testimony solely because it was unsupported by objective evidence.  Where there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain "if he makes specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir.1996).

In evaluating Plaintiff's allegations of excess pain, the ALJ noted that Plaintiff's treatment records reflected only routine medical treatment and follow-up care.  AR 16.  An ALJ may properly consider the inconsistency between a claimant's allegations and her routine medical treatment.  *See, e.g., Moore v. Astrue*, 2009 WL 1330856, *6 (C.D. Cal. May 13, 2009) (a finding that claimant received only occasional routine medical care supported negative credibility determination); *Muro v. Astrue*, 2008 WL 5076448, *8 (C.D. Cal. Nov. 28, 2008) (ALJ "properly considered the

inconsistency between plaintiff's statements and her routine medical treatment"); *Parra v. Astrue,* *481 F.3d 742, 750 (9th Cir. 2007)* (evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment). According to the record, Plaintiff regularly sought treatment at Valley Family, but there is no indication she required more than routine care for her physical complaints. Although a lumbar spine MRI revealed degenerative changes at the L5-S1 level, there is no evidence of any treatment beyond pain medication. AR 211, 324-26. When she received a cardiac referral following complaints of atypical chest pain, her cardiac stress test was normal and required no intervention. AR 307-08. Likewise, x-rays revealed no abnormalities requiring treatment for her hands, chest, shoulder or thoracolumbar junction. AR 378-82.

The ALJ further discounted Plaintiff's testimony because of "questionable compliance" with her psychiatric medication. AR 18. A claimant's failure to follow prescribed treatment is a proper basis for finding her allegations of disabling pain and other symptoms not credible. *See Bruton v.* *Massanari,* 268 F.3d 824, 828 (9th Cir. 2001); *see also Fair v. Bowen,* 885 F.2d 597, 603 (9th *Cir.1989)* (unexplained, or inadequately explained, failure to follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony). In this case, despite Plaintiff's repeated statements that she was compliant with her medications and they were "very helpful," she demonstrated little improvement with her depression and reported having "not done much to reduce her depression." AR 18, 261, 264, 271, 273, 292-95. Indeed, following several months of therapy, Plaintiff's therapist opined that her medication compliance was questionable. AR 18, 357-58. Accordingly, the ALJ's finding regarding medication compliance supports a negative credibility determination.

Insofar as Plaintiff claims that the ALJ erred by failing to address each factor set forth in Social Security Ruling ("SSR") 96-7p, this claim lacks merit. SSR 96-7p identifies factors that may be considered to determine a claimant's credibility, such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment,

other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.  Contrary to Plaintiff's claim, an ALJ is not required to discuss and analyze each and every one of the factors enumerated in SSR 96-7p.  *See, e.g., Howard v. Astrue, 2010 WL 546715, \*13 (E.D. Cal. Feb. 10, 2010)* (plaintiff incorrectly argued that SSR 96-7p sets forth mandatory factors that an ALJ must analyze); *Collins v. Astrue, 2009 WL 1202891, \*6 (C.D. Cal. Apr.27, 2009); O'Neal v. Barnhart, 2006 WL 988253, \*12 n. 7 (C.D. Cal. Apr.13, 2006)*. Instead, the ALJ must give consideration to these factors.  *See* SSR 96-7p.

Here, the record as a whole reflects adequate consideration of these factors.  For instance, the ALJ considered evidence and testimony regarding Plaintiff's daily activities (AR 16), the location, duration, frequency, and intensity of her pain and other symptoms (AR 16-18), the factors that precipitate and aggravate the symptoms (AR 17, 18), the type, effectiveness, and side effects of any medication (AR 16-18), her treatment (AR 16, 18), any measures other than treatment to relieve pain or other symptoms (AR 16) and any other factors concerning her functional limitations and restrictions (AR 16, 18).

The ALJ's findings are sufficiently specific to permit the court to conclude that she did not arbitrarily discredit claimant's testimony.  *Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)*.

**B.     Lay Witness Testimony**

Plaintiff next contends that the ALJ erred in assessing the lay witness testimony of Korlu Vang.  Lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  *Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996)* (*citing Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir.1993)*).  An ALJ may reject lay witness statements when there are inconsistencies between the statements and medical evidence or when the statements describe symptoms that are not documented in claimant's medical records. *Bayliss v. Barnhart, 427*

13

1 | F.3d 1211, 1218 (9th Cir.2005); *Lewis v. Apfel*, 236 F.3d 503, 511-512 (9th Cir.2001).

2       In this case, Mr. Vang, Plaintiff's brother, provided a third-party report, which the ALJ

3 expressly considered.  In particular, the ALJ noted Mr. Vang's statements that Plaintiff had a very

4 hard time with her daily activities and she had limitations on walking, talking, stair climbing, seeing,

5 memory, completing tasks, concentrating, understanding, following instructions and getting along

6 with others.  AR 16.  The ALJ ultimately discounted Mr. Vang's statements, assigning "greater

7 weight to the documented medical evidence."  AR 16.  For instance, the ALJ noted that treatment

8 records showed routine medical treatment, there was no testing to corroborate diabetic neuropathy,

9 x-rays of Plaintiff's hands, right shoulder and chest were normal, consultative evaluations finding no

10 manipulative, visual or communicative limitations, consultative evaluations finding no difficulties in

11 memory, concentration, persistence or pace, and medical opinions indicating that Plaintiff could

12 perform simple, repetitive tasks.  AR 16-18.  Based on the record, the ALJ properly rejected the lay

13 witness testimony that was inconsistent with the objective medical evidence.

14 **C.**     **Medical Opinions**

15       As a final matter, Plaintiff argues that the ALJ failed to properly assess the opinion of her

16 treating physician, Dr. Tran, and the opinion of the state agency medical consultant, Dr. Davis.

17       1.    Treating Physician Opinion - Dr. Tran

18       Plaintiff contends that the ALJ failed to articulate a legally sufficient rationale to reject the

19 opinion of her treating physician, Dr. Tran.

20       Generally, more weight is given to a treating physician's opinion because "he is employed to

21 cure and has a greater opportunity to know and observe the patient as an individual."  *Magallanes v.*

22 *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Where, as here, the opinion of the treating physician

23 conflicts with an examining physician, the ALJ must make findings setting forth specific, legitimate

24 reasons supported by substantial evidence to reject the treating physician's opinion.  *Id.*

25       Here, the ALJ considered the "very restricted and limited functional" assessment provided by

26 Dr. Tran, but gave that opinion "very little weight" because it was "not supported by clinical or

27 objective findings."  AR 18.  An ALJ may properly reject a treating physician's opinion that is

28

inadequately supported by clinical findings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.2004). The ALJ found that Dr. Tran's treatment records identified certain impairments, such as diabetic neuropathy and anemia, but did not include studies, abnormal x-rays or abnormal test results.  AR 16-17.  Plaintiff confirms that the "objective record is a bit lacking," and admits that no EMG was performed and that lab tests did not show a blood level consistent with listing level anemia.[3] Opening Brief, p. 9.

Instead, Plaintiff points to a positive test showing degenerative changes at L5-S1 with narrowing of the disc space in conjunction with Dr. Tran's records consistently noting tenderness in the muscles and joints.  Opening Brief, p. 9; AR 211.  However, the ALJ gave greater weight to the contrary findings of the consultative examiner, Dr. Rustom Damania.  AR 17.  The contrary opinion of an examining source constitutes a "specific and legitimate reason" for rejecting the opinion of a treating source.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Dr. Damania examined Plaintiff on the same date as he ordered her lumbar spine MRI.  AR 203, 211.  Although the MRI showed degenerative change at the L5-S1 level, Plaintiff's examination revealed normal range of motion in both her cervical and dorsolumbar spine, normal straight leg raising and normal gait.  She had no muscle spasms or tenderness and her motor strength was 5/5 in her upper and lower extremities.  Based on these findings, Dr. Damania concluded that Plaintiff had no postural limitations and could stand and walk for six hours and sit six hours out of a normal workday.  AR 205-06.  Dr. Damania's opinion provided substantial evidence supporting the ALJ's rejection of Dr. Tran's physical capacity evaluation.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

---

[3]Plaintiff indicates that an  EMG was ordered, but was not performed "most likely due to the limited resources in the county facilities." AR 190.  Plaintiff's supposition is not supported by the record.

2.     State Agency Medical Consultant - Dr. Davis

Plaintiff claims error because the ALJ generally credited the opinions of the consultative examiners and the state agency physicians in developing Plaintiff's RFC, but did not accept the entire opinion of Dr. Davis, a state agency medical consultant.

Relevant to Plaintiff's claim are the mental RFC's identified by both the consultative examiner and the state agency medical consultants.  The consultative examiner of record, Dr. Shireen Damania, determined that Plaintiff was able to understand, carry out and remember simple one- and two-step job instructions in an unskilled setting and was able to respond appropriately to co-workers, supervisors and the public.  AR 207-09.  Dr. Rudy Warren, a state agency consultative examiner, gave great weight to the consultative examiner and opined that Plaintiff did not have a severe mental impairment.  He concluded that Plaintiff had only mild functional limitations.  AR 245-57.  In contrast, Dr. Davis opined that Plaintiff had moderate functional limitations, could perform only very simple and repetitive work tasks for two hour blocks of time, her psychiatric symptoms might interfere with her ability to work in consistent manner and she would be distracted by working around others.  AR 214-27.

Plaintiff essentially is arguing that the ALJ erroneously preferred the findings of an examining physician and another state agency medical consultant over that of Dr. Davis.  Plaintiff's argument lacks merit.  As a practical matter, the ALJ is responsible for resolving conflicts in the medical testimony.  *Andrews*, 53 F.3d at 1039.  In so doing, the opinion of an examining physician is generally entitled to greater weight than that of a non-examining physician.  *Id*. at 1041.  Here, it is clear that the ALJ assigned more weight to Dr. Damania's opinion.  AR 14, 18.  For instance, in evaluating the severity of Plaintiff's mental impairment, the ALJ found that Plaintiff only had mild functional limitations.  AR 14.

Plaintiff suggests error because the ALJ's RFC included a limitation on interacting with the general public, which was consistent with Dr. Davis' opinion, but did not include Dr. Davis' additional limitation on interaction with co-workers.  However, an ALJ need not believe everything a physician sets forth, and may accept all, some or none of the physician's opinion.  *Magallanes*, 881

16

F.2d at 753-55 (no specific language is required to reject all or a portion of a report).  Further, neither the consultative examiner, nor the other state agency physician found any limitations in Plaintiff's ability to interact with co-workers.

### **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Yia Vang.

IT IS SO ORDERED.

Dated:  __July 29, 2011__          _____ **/s/ Dennis L. Beck**_____
                                        UNITED STATES MAGISTRATE JUDGE

17